UNITED STATES v. SELMAN–REIN-STEIN, Inc., et al.

No. 7441.

District Court, D. Minnesota, Fourth Division.

Sept. 7, 1943.

Stanley V. Jacobson, Asst. U. S. Atty., of St. Paul, Minn., and James M. Miller, Sp. Asst. to U. S. Atty. of Minneapolis, Minn., for plaintiff.

Hyman Edelman (of Leonard, Street & Deinard), of Minneapolis, Minn., for defendants.

NORDBYE, District Judge.

The issue arises upon the following agreed and pertinent facts: Section 7 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 207, requires that time and one-half be paid for all overtime work, and it is agreed for the purpose of this proceeding that defendants' employees are protected by this Act. Defendants' payroll books show that its employees had been paid time and one-half for overtime work. Likewise, the cancelled wage checks show that the employees had received time and one-half for overtime. However, the defendant corporation, through Mr. Selcer, its general manager, had agreed with some of its employees that, although they would be paid time and one-half for overtime, they would, and did, return a part of that which they had been paid, so that in reality they would retain only a sum which would compensate them for overtime at single time rates. Consequently, the entries in the payroll books and checks were not correct representations of that which the employees were actually paid, for they show that the employees received time and one-half for overtime when in fact they did not. The payments to the defendant corporation by the employees of the overtime thus paid are referred to as "kickbacks", and although they are not shown in the payroll books, they were shown in the cash receipts books by an entry such as "Refunds—Edward Erickson." (Erickson was one of the employees involved in these agreements.)

Defendants conclude, therefore, that because their books show that the employees did not keep all the wages paid them, they show exactly what was being done and therefore nothing was falsified. The Government urges, however, that the entries in the payroll books show facts that do not exist and therefore in themselves are false, and that the entries in the cash receipts books do not heal or explain the false entries in the payroll records.

Sections of the Fair Labor Standards Act of 1938, 29 U.S.C.A. which are pertinent to this case read as follows:

"§ 211. * * * (c) Every employer subject to any provision of sections 201–219 of this title or of any order issued under sections 201–219 of this title shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of sections 201–219 of this title or the regulations or orders thereunder."

"§ 215. (a) * * * it shall be unlawful for any person— * * *

"(5) to violate any of the provisions of section 211(c) of this title, or to make any statement, report, or record filed or kept pursuant to the provisions of such section or of any regulation or order thereunder, knowing such statement, report, or record to be false in a material respect."

At the outset, it seems apparent that the wage records by themselves are false; that is, they present a picture which in reality was nonexistent. When a Government inspector comes to determine whether or not a particular concern has complied with the Wage and Hour Law, the fact that he is presented with records covering the payroll for his inspection amounts to a representation that the company's complete wage records are to be found in the books which are so presented. The payroll records were the only records given by the defendants to the wage and hour inspector for his original inspection. A fair consideration of the entire factual situation herein requires a finding that the

defendants used and intended to use their payroll records to indicate that they had paid time and one-half for overtime, and hence they had complied with the law. The entries in the payroll record and the scheme of kickbacks, with the entry thereof in the receipts register, was designed to mislead and deceive. When they made an entry that they had paid the employees time and one-half for overtime, it necessarily follows that that entry was false because, concurrently therewith, the employee was required to refund the extra overtime payment. In other words, the alleged overtime payment, as reflected in the payroll records, was a mere artifice to mislead. It seems reasonably clear that, when the Act speaks of false records, it refers, of course, to records which reflect the payment of wages to employees. One of the purposes of the Act is to enable the Government inspector to readily observe whether the employee has received the wages which the law requires. To suggest, therefore, that because in a record that has no reference to, or apparent connection with, the payroll record of employees, there will be found another record affecting, explaining, or modifying the payroll record so that the truth will appear, and that therefore no false records have been made with respect to the payrolls, would put a premium on dishonesty. In effect, the violator could attempt to take advantage of the false records given to the inspector and if the violation were discovered through other means, the violator could produce other records of which the inspector was not informed and which appear to be unrelated to the wage records but which show the incomplete picture. The violator would therefore have everything to gain by concealment and falsity and nothing to lose. Defendants cannot complain of the limitations that this ruling may place upon that which is embraced within the term "records" as used in the Act. The Court is merely adopting the interpretation which the defendants used when the inspector called for the wage and hour records. Indeed, as one considers the entire situation, that is, the payroll record as well as the cash receipts record, it seems

apparent that the books were designedly arranged and maintained so that these defendants could deceive the Government. The general term "refunds", which is to be found in the cash receipts register, tends to disguise the "kickback", and no reference is found in that book which in any way ties that entry up with the overtime payment reflected in the payroll books.

█ Defendants cite Coffin v. United States, 156 U.S. 432, 463, 15 S.Ct. 394, 39 L.Ed. 481; Dow v. United States, 8 Cir., 82 F. 904; and Commonwealth v. Bardolph, 314 Pa. 579, 172 A. 298, in support of their contention. Although these cases hold, as defendants' counsel states, that a record is not false if it shows exactly what took place, they are not inconsistent with the conclusion that the present statute must be construed to refer to the falsification of payroll records customarily made available to a wage and hour inspector; that is, that Section 215(a) (5) considers that the employer's payroll records must truthfully reflect the wages paid. So far as the opinions indicate in the cases defendants cite, all the records were submitted for inspection in those cases and therefore the records submitted showed the entire transaction. That is not the situation here. The records submitted for inspection here did not show the entire picture, and those submitted showed transactions which, for all practical purposes, did not take place. Commonwealth v. Bardolph, supra, which defendants cite, seems to recognize that, in cases like the instant one, the rule of those cases would not apply, for after adopting the rule stated in the Coffin case, the court stated that no attempt was made to conceal anything by disguising them on the record or omitting them from the record. Here, we have a deliberate attempt to conceal by falsifying the payroll records.

It follows, therefore, that the wage records of the employees of the defendant corporation were false and intentionally made false within the purview of the Act, and a finding of guilty must be entered as to counts 19 to 22, inclusive. It is so ordered.