John T. **DUNLOP**, Secretary of Labor, United States Department of Labor, Appellant,

v.

**GRAY–GOTO, INC.,** a corporation, et al., Appellees.

No. 74–1854.

United States Court of Appeals, Tenth Circuit.

Argued Sept. 17, 1975.

Decided Jan. 16, 1976.

Sandra P. Bloom, Atty., U. S. Dept. of Labor (William J. Kilberg, Sol. of Labor, Carin Ann Clauss, Associate Sol., Jacob I. Karro, Atty., U. S. Dept. of Labor, and Ronald M. Gaswirth, Regional Sol., on the brief), for appellant.

Michael Paul Kirschner, Oklahoma City, Okl. (Hastie, Kirschner & Kinslow, Oklahoma City, Okl., of counsel, on the brief), for appellees.

Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a Fair Labor Standards case. The Secretary of Labor brought the present action under 29 U.S.C. § 217 to enjoin the defendant from violating the overtime pay and recordkeeping provisions of 29 U.S.C. §§ 207 and 211(c), and to enjoin the continued withholding of overtime compensation allegedly due and owing defendant's employees. The trial court found that the defendant was covered by the Fair Labor Standards Act (29 U.S.C. § 201 et seq.). The trial court further found that though certain employees of the defendant had worked overtime for which no overtime premium was paid, the defendant had nonetheless not violated the overtime requirements of the Act because the defendant had paid its employees certain fringe benefits, including paid vacations and holidays, and biannual bonuses, the value of which equalled or exceeded the amount of overtime compensation otherwise due under the Act. These so-called fringe benefits the trial court allowed to be "set off" against unpaid overtime compensation otherwise due defendant's employees. In so holding the trial court relied on its finding that the defendant and its employees had expressly agreed that such fringe benefits would take the place of overtime pay.

The trial court declined to find any violation of the recordkeeping provisions of the Act (29 U.S.C. § 211(c)). In thus holding the trial court did comment on the rather strange recordkeeping system used by the company, but found that the defendant had acted in "complete good faith" and apparently concluded that such good faith was a defense to what might otherwise be a violation of the recordkeeping provisions of the Act.

The trial court having found that there were no violations of the Act, did not make any formal finding concerning the Secretary's additional claim that defendant's violations of the Act were "willful" and hence subject to a three-year Statute of Limitations rather than the two-year statute. 29 U.S.C. § 255. It is true that the trial judge during the course of the trial indicated that he felt the defendant had not acted willfully, but there is no finding on the willfulness issue in the court's formal findings and conclusions, nor in the judgment itself.

Our study of the matter leads us to conclude that the trial court erred in finding that the so-called fringe benefits could be deemed as the equivalent of overtime pay, and that it further erred in holding that defendant's good faith excused what were otherwise violations of the recordkeeping provisions of the Act. The question as to whether these violations were willful has not yet been formally passed on by the trial court and

we do not believe it to be our function to rule on this matter in the first instance.

29 U.S.C. § 207(a) provides that an employee who works in interstate commerce in excess of 40 hours per week shall for the excess hours be paid at a rate no less than "one and one-half times the regular rate at which he is employed." Perhaps the primary purpose of the overtime compensation requirement is to "spread employment" by putting pressure on the employer through the overtime pay requirement. A secondary purpose is to compensate an employee in a specific manner "for the strain of working longer than forty hours." *Bay Ridge Co. v. Aaron*, 334 U.S. 446, 470, 68 S.Ct. 1186, 1200, 92 L.Ed. 1502 (1948).

29 U.S.C. § 207(e) defines what "regular rate" of pay is by stating that such term "include[s] all remuneration for employment paid to, or on behalf of, the employee . . . ." That same section goes on to declare that seven categories of employer payments are not to be taken into consideration in determining what an employee's "regular rate" of pay is. 29 U.S.C. § 207(h) provides that the extra compensation described in subsections (5), (6), and (7) in 29 U.S.C. § 207(e) "shall be creditable toward overtime compensation payable pursuant to this section." Implicit therein is that the extra compensation described in subsections (1), (2), (3) and (4) is not to be credited towards overtime payments required by the Act.

■ The fringe benefits as found by the trial court are "in the form of paid vacations, six holidays with pay each year, biannual bonuses, and the extension of benefits of a group life, health and accident insurance program." Paid vacations and pay for holidays would appear to be included in subsection (2) of 29 U.S.C. § 207(e), which refers to "payments made for occasional periods when no work is performed due to vacation, holiday . . . ." The bonuses would appear to fall into subsection (1) of 29 U.S.C. § 207(e), which refers to "payments in the nature of gifts made at Christmas time or other special occasions, as a reward for service . . . ." The "insurance benefits" found by the trial court would appear to fall within subsection (4) of 29 U.S.C. § 207(e), which refers to "life, accident [and] health insurance or similar benefits for employees." So, under 29 U.S.C. § 207(e) the fringe benefits found by the trial court are not to be included in ascertaining an employee's "regular rate" of pay. At the same time, however, as we read 29 U.S.C. § 207(h) such benefits as were found here by the trial court may not be credited toward overtime compensation due under the Act.

Our holding that the fringe benefits with which we are here concerned may not be credited against overtime pay required by the Act would appear to be in accord with the general case law on the subject. For cases holding that bonuses are not to be credited against an employee's claim for overtime pay, see, by way of example, *Bable v. T. W. Phillips Gas and Oil Company*, 287 F.2d 21 (3d Cir. 1961) and *Roland Electrical Co. v. Black*, 163 F.2d 417 (4th Cir. 1947). In *Rigopoulos v. Kervan*, 140 F.2d 506, 507 (2d Cir. 1943) the Second Circuit stated that 29 U.S.C. § 207 "plainly contemplates that overtime compensation shall be paid in the course of employment and not accumulated beyond the regular pay day." And in *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974) the Fifth Circuit observed that "[s]et-offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the Act . . . ."

The trial court laid particular emphasis on its finding that in the instant case the employees involved and the defendant employer had an express understanding before any employer-employee relationship was ever entered into that there would be no overtime pay for hours worked in excess of forty hours per week, and that in lieu thereof they would receive the fringe benefits above referred to. In our view any such private agreement or understanding between the parties cannot circumvent the

overtime pay requirements of the Act. In this regard see *Brooklyn Bank v. O'Neil*, 324 U.S. 697, 704, 65 S.Ct. 895, 901, 89 L.Ed. 1296 (1945) where the Supreme Court held that "[w]here a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with public interest will not be allowed when it would thwart the legislative policy which it was designed to effectuate." *See also Mitchell v. Greinetz*, 235 F.2d 621 (10th Cir. 1956) where we held that waiver of statutory wages under the Fair Labor Standards Act is not permissible. It is on this basis then that we conclude that the trial court erred in permitting fringe benefits to be set off against overtime pay otherwise due.

With regard to the recordkeeping allegations, the trial court found that the basic time cards kept by the defendant accurately reflected the number of hours worked by each employee, but that the defendant, in transferring the information to the payroll cards, had regularly altered the figures so it appeared that there had been time and a half pay for hours worked in excess of forty hours per week. Specifically, the trial court found as follows:

> With regard to each employee the Defendants kept accurate time records which reflected the exact hours worked by each employee, but then on separate cards the hours worked would be changed and the payroll was based on straight time rather than time and one-half for overtime. As an example, if an employee was making $5.00 an hour and during a given week worked 43 hours, the records turned in by the foreman and kept as a permanent record would truly reflect that the employee worked 43 hours, but when these figures were transposed on to the payroll card the hours worked would be shown to be 42 hours rather than 43 and the card would be made to appear that time and one-half was paid for the extra two hours. These records were open for inspection at all times, the Defendants did not attempt

to conceal them and Mr. Gray in complete good faith believed that he was not violating any law when he set up this record keeping system.

John Gray, the president and executive manager of the defendant company, could give no explanation as to why the information on the basic time cards was uniformly altered when transferred to the payroll records so as to show only two-thirds of the overtime hours actually worked, saying simply that the bookkeeper had told him that was the way the records were supposed to be kept and that "it's been that way since 1960." By reducing the overtime hours actually worked by one-third on the payroll records, it would then appear to an outsider examining the payroll records that an employee who had worked overtime had received overtime premium pay, even though in fact he had been paid for all hours worked, including overtime hours, at the regular rate of pay.

The trial court's own findings, then, indicate that there was a violation of the recordkeeping provisions of the Act. It is undisputed the payroll records did not accurately reflect hours worked and wages paid, and were such as to mislead an outsider examining the payroll records. The payroll records would not appear to comply with the requirements of 29 U.S.C. § 215(a)(5) and 29 C.F.R. § 516.2. *See United States v. Selman-Reinstein*, 52 F.Supp. 208 (D.Minn. 1943), where an employer's payroll records which showed that employees had been paid time and one-half for overtime work, as they actually were paid, were nonetheless "false" within the meaning of the Act when the employee later refunded part of the overtime pay thus received, and such was so notwithstanding the fact that the employer also kept cash receipt books which accurately reflected such refunds. We have held that the duty to keep adequate and accurate records under the Act rests squarely on the employer. *Bledsoe v. Wirtz*, 384 F.2d 767 (10th Cir. 1967). Such was not done in the instant case.

As indicated, the trial court further found, however, that the "good faith" of the defendant excused any violation. Our attention has not been directed to any authority holding that so-called "good faith" of the variety here found by the trial court excuses what is otherwise a clear violation of the record-keeping provisions of the Act. In fact, in *Shultz v. Mistletoe Express Service, Inc.*, 434 F.2d 1267 (10th Cir. 1970), we held that good faith is not a defense, as such, in actions for injunctions under 29 U.S.C. § 217, although the form of the relief to be granted in a given case is still dependent on equitable considerations. *See also Burk Builders, Inc. v. Wirtz*, 355 F.2d 451, 453 (5th Cir. 1966); *Shultz v. Parke*, 413 F.2d 1364, 1370 (5th Cir. 1969); *Wirtz v. Malthor, Inc.*, 391 F.2d 1 (9th Cir. 1968). Accordingly, we conclude that the trial court erred in failing to find a recordkeeping violation on the part of the defendant and in failing to grant appropriate equitable relief in connection therewith.

As above mentioned, we are of the view that we should not here make a determination as to whether the defendant's violations of the Act were "willful" within the meaning of 29 U.S.C. § 255. Such should be done in the first instance by the trial court.

Judgment reversed and cause remanded for further proceedings consonant with the views herein expressed.