

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-24-2005

# Wheeler v. Hampton Twp

Precedential or Non-Precedential: Precedential

Docket No. 04-1728

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Wheeler v. Hampton Twp" (2005). *2005 Decisions.* Paper 1495.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1495

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-1728

WILLIAM WHEELER, II, an individual,
and ROBERT J. LOMB, an individual, on behalf
of themselves and other individuals similarly situated,

Appellants

v.

HAMPTON TOWNSHIP,

_____

On appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 03-cv-00976
Chief District Judge: The Honorable Donetta W. Ambrose
_____

Argued November 18, 2004
_____

Before: ROTH, SMITH, and BECKER, *Circuit Judges*

(Filed: February 24, 2005)

_____

Counsel:     Robert A. Eberle (Argued)
           Joseph S. Pass
           Jubelirer, Pass & Intrieri, P.C.
           219 Fort Pitt Boulevard
           Pittsburgh, PA 15222
           *Attorney for Appellants*

           Suzanne B. Merrick (argued)
           Gaitens, Tucceri & Nicholas, P.C.
           519 Court Place
           Pittsburgh, PA 15219
           *Attorneys for Appellees*

_____

OPINION OF THE COURT

_____

SMITH, *Circuit Judge*.

This appeal arises out of a suit filed by the full-time police officers of Hampton Township, Pennsylvania to recover overtime pay under the Fair Labor Standards Act ("FLSA" or "the Act"). 29 U.S.C. §§ 201-19 (2004). The officers contend that the Township's method of calculating overtime shortchanged them under the FLSA, even though they agreed to

2

that method in a collective bargaining agreement. The Township argues that, while the officers bargained away in the agreement one of their rights under the FLSA, the Township overcompensated the officers by bargaining away a more valuable right under the FLSA and thus offset the Township's liability under the Act. The District Court upheld the Township's position, holding that the collective bargaining agreement satisfies the overall requirements of the FLSA, even though it contains concessions by both parties not envisioned in the Act. We conclude that the FLSA does not support applying the Township's alleged concession as an offset, and therefore we will reverse the judgment of the District Court.[1]

---

[1]We have jurisdiction in this case under 28 U.S.C. § 1291, as the District Court's grant of Defendants' motion to dismiss was a final decision. The District Court had jurisdiction pursuant to 29 U.S.C. § 216(b), which establishes a private right of action against a covered employer to recover unpaid overtime compensation, and provides federal court jurisdiction over such actions. Under *Garcia v. San Antonio Metropolitan Transit Authority*, this provision covers local governments. 469 U.S. 528 (1985) (cited in *Brooks v. Ridgefield Park*, 185 F.3d 130, 134 (3d Cir. 1999)).

## I.

## A.

The genesis of this dispute is a collective bargaining agreement ("CBA") that established the terms of employment for the full-time police officers ("the Officers") of Hampton Township from January 2000 through December 2003.[2] While the parties agree on how the CBA calculates overtime, they sharply disagree over whether the CBA's calculation provides all the overtime required under the FLSA.

The CBA provides as follows. The Officers are entitled to a specified "basic annual salary," which varies according to the officers' rank, and annual percentage raises to that salary. For example, a starting patrolman under the CBA received a basic annual salary of approximately $37,000 in 2000, $38,000 in 2001, and $39,000 in 2002. A normal workweek under the CBA is five consecutive days in any seven day period, and a normal work day lasts eight consecutive hours in any 24-hour period.

Overtime pay is provided under the CBA for work over eight hours in a single workday, and for work over 40 hours in a single workweek. Overtime pay rates are calculated by dividing the officers' basic annual salary by 2,080 and

---

[2]The original agreement lasted from January 1, 2000 through December 31, 2002; before it expired the parties extended the agreement through December 2003.

multiplying the resulting figure by 1.5. To illustrate, a starting patrolman in 2000 earning $37,000 who worked 10 extra hours (i.e., 50 total hours) in a given week would be entitled to $266.90 (*$37,000/2,080 = $17.79 x 1.5 = $26.69 x 10 = $266.90*) in overtime payments for that week.

The CBA provides two other broad categories of remuneration that are relevant to the present dispute. First, the CBA provides pay for certain non-working time ("non-work pay"), including

- 11 paid annual holidays (e.g., New Year's Day, Memorial Day, etc.),

- 2 paid annual personal days,

- paid annual vacations of varying length depending on seniority, and

- 1.5 paid sick days each month.

With the exception of vacations, which are to be paid at the "regular weekly rate," a term that is not defined, the CBA does not explain what amounts the Officers are paid for these non-working days. Second, the CBA provides specified incentive/expense payments ("incentive/expense pay"), including:

- monthly longevity pay for senior officers,

- annual pay for educational attainment,

- increased hourly pay for shift

5

> commanders, and
>
> - annual stipends for uniform replacement, maintenance, and cleaning.

In contrast to non-work pay, the CBA provides precise dollar figures for each category of incentive/expense pay. For example, an officer receiving a bachelor's degree from an accredited institution in a field directly related to the officer's responsibility receives an additional $250.00 per year.

## B.

In their complaint, the Officers argued that the FLSA mandates that their basic annual salary be augmented before the base hourly rate is calculated for overtime purposes. Specifically, the Officers claimed that the CBA impermissibly took their basic annual salary *alone*, divided it by 2,080, and multiplied that figure by 1.5 to establish their overtime pay rate. Instead, according to the Officers, the CBA should have added the four items of incentive/expense pay to their basic annual salary, divided the sum by 2,080, and multiplied that (higher) figure by 1.5 to establish their overtime pay rate. The Officers sought to recover the amount of overtime lost during the three years preceding the suit, interest on that amount, liquidated damages, attorneys' fees, and costs.

The Township did not deny that the CBA established the overtime calculation described by the Officers. Rather, the Township argued that the Officers traded their right to have incentive/expense pay added to their basic annual salary in the

6

CBA's overtime calculation in exchange for the inclusion of non-work pay, which is not required under the FLSA. According to the Township, because the value of the latter far outweighed the former, the basic annual salary (and, hence, the ultimate overtime rate) was inherently higher than it otherwise would have been – indeed, higher than if non-work pay had been excluded from the calculus and incentive/expense pay had been included. "Hampton Township and the Police department have negotiated a method of calculating overtime rate of pay which *exceeds* the minimum legal rate established under the FLSA," the Township concluded. (Emphasis in original.)

The District Court agreed with the Township. According to the Court, the focus of the FLSA's overtime compensation scheme "is on the total overtime compensation received by the employee," not on whether the parties have complied with specific components of the FLSA. As support for this proposition, the Court cited *Minizza v. Stone Container Corporation*, in which we stated that the "FLSA was not intended to emasculate the ability of labor and management to be creative in resolving labor disputes in a manner which is mutually beneficial . . . to all parties involved in such negotiations." 842 F.2d 1456, 1463 (3d Cir. 1988). To adopt the Officer's argument, the District Court stated, would be to stand in the way of "innovative collective bargaining," obstruction forbidden in *Minizza*. The District Court held that "as long as the officers were compensated 'at a rate of *not less than* one and one-half times the regular rate,' they have not made out a statutory violation, regardless of the formula used by

7

the employer (in negotiations with the union) to achieve that result." (Emphasis in original.) According to the District Court, the Officers did not dispute that the CBA exceeded the FLSA's overall requirements for calculating overtime, and consequently they failed to state a claim for which relief could be granted.

## II.

We review a decision granting a motion to dismiss for failure to state a claim de novo. *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003). "Dismissal for failure to state a claim is appropriate only if it 'appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## A.

As this dispute turns on applying the FLSA to the CBA, we begin by laying out the controlling provisions of the statute. Under the FLSA, covered employers may not employ any employee "for a workweek longer than forty hours unless such employee receives compensation for his employment . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).[3] In turn, "the

_____

[3]In full, § 207(a)(1) provides:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any

'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include . . . payments made for occasional periods when no work is performed due to vacation, holiday, illness . . . and other similar payments to an employee which are not made as compensation for his hours of employment."  29 U.S.C. § 207(e)(2).[4]

---

workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

[4]In full, § 207(e)(2) provides:

As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include–

. . . .

(2) payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other

In construing the foregoing provisions, the parties agree on much. The parties of course agree that the Officers must receive one-and-a-half times their "regular rate" of pay. They also agree that § 207(e) establishes that the regular rate "shall not be deemed to include" non-work pay, but that the regular rate "shall be deemed to include" all remuneration, including incentive/expense pay. Still further, the parties agree that the CBA's version of the "regular rate" – what it calls the "base hourly rate" – does not include incentive/expense pay,[5] and that non-work pay comprises some portion of the CBA's base hourly rate. The disagreement in this case is whether the FLSA allows the Township to offset the exclusion of incentive/expense pay from the base hourly rate with a "credit" for including non-work pay in the base hourly rate. According to the Township, it

expenses, incurred by an employee in furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment[.]

[5]At oral argument, the Township conceded that longevity, educational attainment, and shift commander pay were "remuneration" under § 207(e), and the Township's brief concedes that the CBA did not include those items in, or add those items to, the basic annual salary for purposes of overtime calculations. The Township avers that under the Code of Federal Regulations uniform pay does not count as remuneration for purposes of overtime calculations, however.

deserves such a credit because the base hourly rate includes non-work pay even though § 207(e) states that the regular rate "shall not be deemed to include" such pay. The District Court agreed.[6]

### 1. 29 U.S.C. § 207(e)

The Township's argument for a credit founders on the text it cites to support its position. That provision, § 207(e), states that an employee's "regular rate" of pay "shall not be deemed to include . . . payments made for occasional periods when no work is performed . . . and similar payments." 29 U.S.C. § 207(e)(2). According to the Township, if it followed that provision to the letter, the Officers would get less overtime pay than they do under the CBA. We agree that, under § 207(e)(2), the Township *did* not have to agree to a CBA that included non-work pay in its regular rate. Assuming, as do the parties, that such pay already is included in the CBA, however, we disagree that under § 207(e)(2) the Township *does* not have to include non-work pay in its regular rate. The CBA requires

_____

[6]Additionally, as we have noted, the District Court concluded that the Officers "do not appear to contest that the Township has exceeded the minimum requirements for calculating overtime as a whole." That conclusion was in error. As their brief in opposition in the District Court, their brief on appeal, and their counsel's statements before us at oral argument make plain, the gravamen of the Officers' case was, and is, that the CBA fails to provide the minimum amount of overtime required by the FLSA.

11

the Township to do so, and § 207(e) nowhere suggests that we should relieve the Township of that obligation.

The pivotal language is "shall not be deemed." 29 U.S.C. § 207(e)(2). Consistently, we and our sister circuits have applied that phrase to mean that employees seeking unpaid overtime may not under the FLSA require that non-work pay be added to the regular rate. In *Minizza*, for example, we held that lump sum payments provided under a collective bargaining agreement did not have to be added to the agreement's regular rate because they were an incentive to conclude a labor agreement, not compensation for services rendered. 842 F.2d at 1463. Likewise, the Sixth Circuit held that bonuses for the absence of medical claims and the non-use of sick leave did not have to be added to the regular rate because they were not compensation for services. *See Featsent v. City of Youngstown*, 70 F.3d 900, 905 (6th Cir. 1995)**.** Recently, the Ninth Circuit held that payments for lunch periods, when employees did not work, were not compensation for hours worked and thus properly were excluded from the regular rate. *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 909 (9th Cir. 2004).

None of these cases, or any other case we have found, holds that a labor agreement that indisputably adds non-work pay to the regular rate violates § 207(e), or that § 207(e) supports a credit against other statutory obligations. We suspect that is for good reason: the plain text of the statute undercuts both of those constructions. Both constructions call for action by the Court, while the text calls for inaction. Section 207(e)

12

does not say "shall *be deemed not* to include," but "*shall not be* deemed to include."   29 U.S.C. § 207(e).   The difference in meaning between those two statements is immense.  The former requires court intervention in the face of a labor agreement already containing non-work pay augments to the regular rate. The latter signals court passivity in the face of such an agreement.

The function of § 207(e)(2) is to forbid this Court from deeming that the CBA include non-work pay.  We will follow that injunction, for the parties agree that the CBA already contains non-work pay in the regular rate.  There is thus nothing for this Court to "deem."   The deed is already done by the parties' own hands.  Nothing in § 207(e) suggests that the Court should undo it.   Consequently, we see no textual reason to "credit" the Township for including such pay in its regular rate.

The context of § 207(e)(2) confirms our reading of that provision.   There is no cause of action for employers in the FLSA. *See generally* 29 U.S.C. § 216(b) ("Any employer who violates the provisions . . . of this title shall be liable to the employee[s] affected in the amount of their . . . unpaid overtime compensation . . . .").  Once an employer agrees to pay a given amount of overtime pay, the employer may not sue to recover excess pay under the statute.   The FLSA is a shield for employers, not a sword.  That undoubtedly is one reason why the Township did not file a counterclaim in this case for paying too much overtime.  Such a move might have been impolitic; it certainly would have lacked any basis in the Act.  Likewise, while § 207(e) protects the Township from having to include non-work pay in the regular rate, it does not authorize the Township now to require such augments to be stripped out, or to take a credit for including such augments.  The Township asks us to use § 207(e)'s "shall not be deemed" language as an

13

offensive weapon to eviscerate the requirements of that section's "shall be deemed" language. As that reading of § 207(e) runs counter to the defensive litigation posture required of employers under the FLSA, we decline to adopt it.

## 2. 29 U.S.C. § 207(h)

Where a credit is allowed, the statute says so. Section 207 provides that employers may credit premium payments for work outside standard work periods against statutorily required overtime pay: "[e]xtra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be creditable toward overtime compensation payable pursuant to this subsection." 29 U.S.C. § 207(h)(2). "Extra compensation" is pay at a "premium rate" for hours worked. *See* 29 U.S.C. § 207(e)(5)-(7).[7] Such "extra compensation" is a kind of overtime

_____

[7]In full, § 207(e)(5)-(7) provide:

> As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include–
>
> . . .
>
> (5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours,

14

compensation, and thus need not be added to the regular rate. Likewise, such compensation may be credited against the Act's required overtime pay. *See Herman v. Fabri-Centers of Am.*, 308 F.3d 580, 587 (6th Cir. 2002) (explaining that Congress "considered it unfair to require the inclusion of contractual premiums not required by the Act in the [regular rate], thereby making the employer pay 'overtime on overtime'" and "fair to employers to give them a credit for certain contractual premiums

---

as the case may be;

(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days; or

(7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section[)], where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek.

15

paid against the statutory overtime they might owe").

The Township does not qualify for the credit allowed under § 207(h)(2) because it does not claim to have provided in the CBA extra pay for hours worked. *See* 29 U.S.C. § 207(e)(5)-(7). Moreover, the Township does not seek the kind of dollar-for-dollar credit for premium pay described in § 207(e)(5), (6), and (7). *See Howard v. City of Springfield*, 274 F.3d 1141, 1147 (7th Cir. 2001) (holding, inter alia, that premium payments for days off may be used as dollar-for-dollar offsets of overtime liability); *Alexander v. United States*, 32 F.3d 1571, 1575 n.4 (Fed. Cir. 1994) ("[t]he term 'creditable' means that the [employer] can deduct premium pay excluded from the regular rate under 29 U.S.C. § 207(e)(5)-(7) from the FLSA overtime pay"). Rather, the Township seeks a credit for allegedly including non-work pay – presumably at a non-premium rate – in the CBA's basic annual salary. The FLSA does not provide for such an offset.[8]

_____

[8]Another provision of § 207(h) could be read to forbid the credit the Township seeks. Section 207(h)(1) states that sums excluded from the regular rate pursuant to subsection (e) shall not be creditable toward . . . overtime compensation required under this section." 29 U.S.C. § 207(h)(1). We think that provision is inapplicable to the present dispute, however, as it, too, appears to ban dollar-for-dollar set-offs. *See Ballaris*, 370 F.3d at 913 ("[T]he use of paid lunch compensation to offset wages or overtime compensation due for hours worked is in direct violation of the express provisions of section 7(h)."); *Dunlop v. Gray-Goto, Inc.*, 528 F.2d 792, 794 (10th Cir. 1976) (holding under section 7(h) that fringe benefits including "paid vacations, six holidays with pay each year, [and] biannual bonuses" could not be "credited against" FLSA-required overtime compensation); 29 C.F.R. § 778.216 ("since [non-

16

### 3. Locating the Offset

Assuming that the Township could claim a credit under the FLSA for including non-work pay in the CBA's overtime calculation, we fail to see where that calculation includes such pay. There is no question that the CBA's base hourly rate does not include incentive/expense pay. The CBA specifies the value of each of those items, which never appear in the CBA's overtime formula. At oral argument, the Township conceded that incentive/expense pay is remuneration that, if no offset is allowed, should be added to the CBA's basic annual salary to satisfy the FLSA's overtime calculation requirement.[9] Thus, on the Officers' side of the ledger, the CBA's overtime formula clearly does not include every augment required by the FLSA.

But our search for the Township's offsetting concession turns up nothing. According to the Township, the base hourly rate contains an augment representing non-work pay. The CBA nowhere specifies what the Officers are paid for non-working

work] payments are not made as compensation for the employee's hours worked in any workweek, no part of such payments can be credited toward overtime compensation due under the Act.").

Notwithstanding its use of the term "credit" in its brief, the Township does not truly claim a credit, in the sense of a set-off, for paying the Officers for non-work time. That surely would be double-counting forbidden by § 207(h)(1) under the authorities just cited. Instead, the Township argues that non-work pay enhanced the basic annual salary, raising the overall rate of overtime compensation. Though we decide the case on other grounds, we note here our doubt that § 207(h)(1) speaks to that type of "credit."

[9] *See* Section II. C., below.

days. Along with the Officers, we assume such pay is folded into the Officers' basic annual salary. Yet, we do not know what proportion of the basic annual salary non-work pay represents. The "basic annual salary" portion of the CBA's overtime formula is a black box. As we lack any means to "go behind the contract," we are unwilling to assume that the CBA's base hourly rate adequately compensates the Officers, when that rate plainly does not include incentive/expense pay.

The other number for which the parties bargained in the CBA's overtime compensation formula, 2080, heightens our doubts that there is any offset in the CBA. As noted earlier, 2,080 is the number of hours by which the basic annual salary is divided to obtain the "base hourly rate" (the CBA's version of the FLSA's "regular rate"). Simple multiplication shows that 2,080 equals the number of working hours in a full, 52-week year of 40-hour weeks. If, as the Township claims, the CBA boosts the basic annual salary to reflect non-work pay, choosing 2,080 as the divisor seems to negate that action in the ultimate overtime calculation. That is because the higher the divisor, the lower the ultimate overtime rate.[10] A simple illustration may

---

[10]This result is supported by the regulations, which provide that in deriving an hourly rate from a salary, you must divide the salary "*by the number of hours which the salary is intended to compensate*," 29 C.F.R. § 778.113 (a) (emphasis added), or, in the case of monthly salaries, "*by the number of working days in the month*." *Id.* at § 778.113 (b). (emphasis added). *See also 149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199 (1947) (invalidating a regular rate derived based on a fixed number of hours, rather than the actual hours scheduled to be worked). So if the Township is correct that officers are not scheduled to work during their vacation times, then those hours are not properly part of the denominator.

18

clarify this point. Let us assume that the Officers' basic annual salary was $100, and that the number of annual hours chosen for the divisor was 10. Under the FLSA, the Officers' overtime rate would be $15 per hour (*$100/10 = 10 x 1.5 = $15*). Now let us assume the same basic annual salary of $100, but that the number of annual hours chosen for the divisor was 20. Under the FLSA, the Officers' overtime rate using those numbers would be $7.50 per hour (*$100/20 = 5 x 1.5 = $7.50*). In short, what the Township purports to have given by raising the basic annual salary for non-work pay, it seems to have taken away by raising the number of hours chosen for the divisor to reflect a full working year.[11]

4. Conclusion

The District Court approved the alleged offset in the CBA on the ground that economically beneficial bargaining

---

[11]Other regulations promulgated under the FLSA further endorse this reasoning, providing that:

> [i]f an employee whose maximum hours standard is 40 hours was hired at a salary of $200 for a fixed workweek of 40 hours, his regular rate at the time of hiring was $5 per hour. If his workweek is later reduced to a fixed workweek of 35 hours while his salary remains the same, it is the fact that it now takes him only 35 hours to earn $200, so that he earns his salary at the average rate of $5.71 per hour. His regular rate thus becomes $5.71; it is no longer $5 an hour.

29 C.F.R. § 778.322. While in the present case the work week was "reduced" *ex ante*, rather than *ex post*, the lesson remains the same: the fewer the hours counted in the workweek, the higher the regular rate, and vice versa.

19

between management and labor is to be encouraged. We reaffirm our dictum in *Minizza*, paraphrased by the District Court, that the "FLSA was not intended to limit [the] creativity of labor and management to make economically beneficial agreements." But if that maxim were limitless, the FLSA would be meaningless. The FLSA explains what credits employers may take for "extra compensation." As the Township claims a credit where the Act does not support one, the District Court incorrectly granted the Township's motion to dismiss.

## C.

We now consider which items of incentive/expense pay constitute "remuneration" that must be included in the CBA under the FLSA. Concluding that there was an offset, the District Court stopped short of that question. As we reverse the District Court's judgment, normally we would allow the District Court on remand to consider first that mixed question of law and fact. However, at oral argument the Township conceded that, in the absence of an offset, the FLSA requires that the incentive pay items sought by the Officers must be added to the CBA's basic annual salary in calculating the overtime. *See also* Appellee's Br. at 13 (stating that the Officers "relinquished the inclusion of the disputed categories of pay when they entered into the [CBA]"). The Township continues to dispute that the uniform allowance must be added to the basic annual salary, however. Accordingly, we hold that longevity pay, educational incentive pay, and senior officer pay must be added to the CBA's basic annual salary calculation. *See Brooks*, 185 F.3d at 136 ("The nonwaivable nature of the provisions of the FLSA is well-settled, even if obtained by negotiations for a collective

20

bargaining agreement.").[12]  We leave it to the District Court to determine the precise amounts owed for each of these items, and whether the FLSA requires that the CBA's basic annual salary include the annual uniform allowance.[13]

## III.

For the foregoing reasons, we will reverse the judgment of the District Court and remand for proceedings consistent with this opinion.

---

[12]In cases interpreting the FLSA, longevity and educational incentive pay have been required to be included in the regular rate in calculating overtime payments. *See O'Brien v. Town of Agawam*, 350 F.3d 279, 296-97 (1st Cir. 2003) (longevity and educational incentive pay); *Featsent*, 70 F.3d at 906 (same). Because of the Township's express concession that senior officer pay should be included in the overtime calculation (absent an offset), we decline to remand that question to the District Court.  As explained above, we hold that such pay must be included.

[13]To aid the District Court's consideration, and because on appeal the parties alluded to this regulation without citation, we note without comment that 29 U.S.C. § 778.218 states that "[p]ayment by way of reimbursement for the following types of expenses will not be regarded as part of the employee's regular rate: (2) The actual or reasonably approximate amount expended by an employee in purchasing, laundering or repairing uniforms or special clothing which his employer requires him to wear."

21