Filed 5/28/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GENERAL ATOMICS,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>    Respondent,<br><br>TRACY GREEN,<br><br>    Real Party in Interest. | D078211<br><br>(San Diego County Super. Ct. No. 37-2019-00028571-CU-OE-CTL) |

ORIGINAL PROCEEDINGS in mandate. Ronald L. Styn, Judge. Petition granted.

Paul Hastings, Paul W. Cane, Jr. and Zachary P. Hutton, for Petitioner.

Seyfarth Shaw, Jeffrey A. Berman and Sheryl L. Skibbe, for the California Employment Law Council and the Employers Group, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Diversity Law Group, Larry W. Lee, Max W. Gavron; Polaris Law Group and William L. Marder for Real Party in Interest.

Tracy Green sued her employer, General Atomics, based on its alleged failure to provide accurate, itemized wage statements showing "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." (Lab. Code, § 226, subd. (a)(9).)[1] Green maintained that General Atomics "failed to identify the correct rate of pay for overtime wages" because its wage statements showed "0.5 times the regular rate of pay rather than 1.5."

General Atomics moved for summary adjudication, challenging Green's theory of liability. It contended that its wage statements complied with the statute because they showed the total hours worked, with their standard rate or rates, and the overtime hours worked, with their additional premium rate. The trial court issued an order denying the motion. General Atomics challenges that order by petition for writ of mandate.

We conclude the trial court erred by determining that General Atomics' wage statements violate section 226. The wage statements show the applicable hourly rates in effect and the corresponding number of hours worked at each rate. In the wage statements provided by General Atomics, the applicable hourly rates are (1) the standard hourly rate determined by contract or other agreement between the employee and the employer and (2) the overtime premium hourly rate, determined by statute, that must be added to the employee's standard wages to compensate the employee for working overtime. These rates are plainly shown, along with the hours worked at each rate.

---

[1] Further statutory references are to the Labor Code unless otherwise specified.

2

While other formats may also be acceptable, given the complexities of determining overtime compensation in various contexts, the format adopted by General Atomics adequately conveys the information required by statute. It also allows employees to readily determine whether their wages were correctly calculated, which is the central purpose of section 226. Indeed, the alternative format Green proposes would make such a determination more difficult, rather than less. We therefore grant the petition for writ of mandate.

## FACTUAL AND PROCEDURAL BACKGROUND

Green's operative complaint contains two causes of action. The first is a putative class action. The second is a representative action under the Labor Code Private Attorneys General Act (PAGA; § 2698 et seq.). Both causes of action are based on the same theory of liability, that General Atomics violated section 226, subdivision (a) by providing wage statements that do not identify the correct rate of pay for overtime wages. Green maintained that the correct rate was 1.5 times (1.5x) the regular rate of pay, and the wage statements provided by General Atomics showed only 0.5 times (0.5x) the regular rate.

To test Green's theory of liability, the parties appear to have agreed that General Atomics would file an early motion for summary adjudication directed at Green's PAGA claim. In that motion, General Atomics contended that its wage statements were lawful. It argued that its wage statements complied with section 226 because they showed the applicable hourly rates—i.e., the standard contractual hourly rate and the overtime premium rate—and the hours worked at each. General Atomics supported its argument with, among other things, a sample wage statement from the Division of Labor Standards Enforcement (DLSE) showing the overtime

3

hourly rate as a 0.5x overtime premium.  General Atomics asserted that showing a 1.5x overtime rate would produce noncompliant wage statements in many common scenarios, including when an employee is paid at multiple standard hourly rates during a single pay period.

In opposition, Green cited the statutory requirement that overtime be paid "at the rate of no less than one and one-half times the regular rate of pay for an employee." (§ 510, subd. (a).)  Thus, Green argued, a wage statement that showed an overtime hourly rate other than 1.5x was not compliant because it did not show the correct, statutory hourly rate.  Green did not contend that General Atomics had incorrectly calculated overtime pay (or failed to pay the correct amounts), only that it did not provide compliant wage statements showing the correct hourly rate of pay.

Green claimed that the wage statements provided by General Atomics were confusing because they do not separately show overtime hours that were compensated at 1.5x the regular rate of pay.  Instead, they show the overtime rate as 0.5x the regular rate.  They also list overtime hours twice, once for the standard contractual rate and once for the overtime premium.  Green maintained that the DLSE sample wage statement was inapplicable because it covered a worker compensated on a piece-rate basis, rather than an hourly basis.  The DLSE sample for workers earning a single standard hourly rate showed a 1.5x overtime rate.

After hearing argument, the trial court asked Green to submit examples of wage statements showing a 1.5x overtime rate for employees who earned multiple standard hourly rates during a single pay period.  Green filed a supplemental brief attaching various examples.  General Atomics responded that Green's examples either did not reflect multiple standard hourly rates or did not comply with section 226 themselves.

After another hearing, the court issued a written order denying General Atomics' motion for summary adjudication. The court noted that the material facts were undisputed. General Atomics admitted its wage statements show a 0.5x overtime premium, rather than a 1.5x overtime rate. The court found that the wage statements provided by General Atomics should have shown the nonovertime hours and overtime hours separately, with their applicable hourly rates. By combining nonovertime hours and overtime hours, and listing the overtime hours a second time with the 0.5x overtime premium, the wage statements did not show the 1.5x overtime rate or allow an employee to easily calculate it.

The court was unpersuaded that showing the 1.5x overtime rate would be impractical or cause confusion when an employee earns multiple standard hourly rates during a single pay period. It wrote, "Defendant argues an employee never works at the regular rate or at 1.5 times the regular rate, rather the employee works at the base rate or rates, then a calculation is done which determines the regular rate and only then is the overtime premium added. While this may be the method of calculation, the overtime hours are worked at 1.5 times the regular rate and that is the rate that needs to be displayed in order to comply with the law and so that the employee can determine the overtime hours worked and the overtime rate."[2]

General Atomics filed a petition for writ of mandate in this court challenging the trial court's order denying its motion for summary

---

[2] In its order, the trial court provided an example it believed reflected multiple standard hourly rates. While this example showed both a normal rate and a "[l]ead" premium, the employee earned both for all of her hours worked. The employee therefore earned a single standard rate (normal plus "[l]ead" premium) for the entire pay period. The court was therefore mistaken that its example showed multiple standard hourly rates.

adjudication.  (Code Civ. Proc., § 437c, subd. (m)(1).)  We issued an order to show cause, and these proceedings followed.

DISCUSSION

Our review following an order granting summary adjudication is substantively identical to our review following an order granting summary judgment.  (See *Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1157.)  "A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law."  (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003.)  "We review the record and the determination of the trial court de novo."  (*Id*. at p. 1003.)  This standard is not materially affected by the procedural posture of this original proceeding.  (*Prudential Ins. Co. of America, Inc. v. Superior Court* (2002) 98 Cal.App.4th 585, 594-595.)

As noted, section 226 requires an employer to furnish to its employee "an accurate itemized statement in writing" showing, among other things, "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . ."  (§ 226, subd. (a)(9).)  "The proper interpretation of a statute, and its application to undisputed facts, presents a question of law that is also subject to de novo review."  (*Morgan v. United Retail Inc.* (2010) 186 Cal.App.4th 1136, 1142 (*Morgan*).)

In interpreting section 226, we apply well-settled rules of statutory construction.  (*Morgan, supra*, 186 Cal.App.4th at p. 1142.)  "[O]ur primary task is determining legislative intent.  [Citation.]  In doing so, we 'look first to the words of the statute, "because they generally provide the most reliable indicator of legislative intent." '  [Citations.]  Where a statutory term 'is not

6

defined, it can be assumed that the Legislature was referring to the conventional definition of that term.' [Citations.] We thus give the words in a statute 'their plain and commonsense meaning.' [Citation.] 'Furthermore, a particular clause in a statute must be read in harmony with other clauses and in the context of the statutory framework as a whole.' [Citation.] Additionally, 'statutes governing conditions of employment are to be construed broadly in favor of protecting employees.' " (*Heritage Residential Care, Inc. v. Division of Labor Standards Enforcement* (2011) 192 Cal.App.4th 75, 81-82.)

"The core purpose of section 226 is 'to ensure an employer "document[s] the basis of the employee compensation payments" to assist the employee in determining whether he or she has been compensated properly.' " (*Ward v. United Airlines, Inc.* (2020) 9 Cal.5th 732, 752.) "Section 226 'play[s] an important role in vindicating [the] fundamental public policy' favoring ' " 'full and prompt *payment* of an employee's earned wages.' " ' " (*Soto v. Motel 6 Operating, L.P.* (2016) 4 Cal.App.5th 385, 390.) Its aim " ' "is to [ensure] that employees are adequately informed of *compensation received* and are not shortchanged by their employers[.]" ' " (*Id*. at p. 392.)

To frame the issues, we begin with some examples of different wage statement formats. In their briefing in this court, the parties largely frame their contentions around simplified versions of the wage statements provided by General Atomics. A simplified General Atomics wage statement for an employee who earns a single standard hourly rate appears in the table below. This employee earns an hourly rate of $25 and worked 45 hours total, of which 5 hours were overtime. The statement shows 45 hours at the employee's standard rate and 5 hours at a 0.5x overtime rate. In our examples, we have omitted the notation "(0.5x)" after the "Overtime"

7

description, which General Atomics includes in its briefing, because it does not appear in its actual wage statements.

| Table 1A | | | |
|---|---|---|---|
| Description | Hours | Rate | Gross Pay |
| Straight-time | 45 | $25.00 | $1,125.00 |
| Overtime | 5 | $12.50 | $62.50 |
| **Total Hours Worked:** 45 | | **Total Pay:** $1,187.50 | |

Under Green's theory, this wage statement should look like the following table, with the overtime hours and a 1.5x rate stated separately.

| Table 1B | | | |
|---|---|---|---|
| Description | Hours | Rate | Gross Pay |
| Straight-time | 40 | $25.00 | $1,000.00 |
| Overtime (1.5x) | 5 | $37.50 | $187.50 |
| **Total Hours Worked:** 45 | | **Total Pay:** $1,187.50 | |

A simplified General Atomics wage statement for an employee who earns multiple standard hourly rates appears in the next table. This employee is compensated at two different hourly rates, depending on her task or role, and she worked a total of 50 hours, of which 10 hours were overtime.

| Table 2A | | | |
|---|---|---|---|
| Description | Hours | Rate | Gross Pay |
| Straight-time | 20 | $15.00 | $300.00 |
| Straight-time | 30 | $20.00 | $600.00 |
| Overtime | 10 | $9.00 | $90.00 |
| **Total Hours Worked:** 50 | | **Total Pay:** $990.00 | |

Green offers the following table, which reflects her interpretation of the statutory requirement for an employee who earns two different standard hourly rates. The nonovertime and overtime hours are stated separately, as are their corresponding rates.

8

| Table 2B | | | |
|---|---|---|---|
| **Description** | **Hours** | **Rate** | **Gross Pay** |
| Straight-time | 15 | $15.00 | $225.00 |
| Overtime (1.5x) | 5 | $24.00 | $120.00 |
| Straight-time | 25 | $20.00 | $500.00 |
| Overtime (1.5x) | 5 | $29.00 | $145.00 |
| **Total Hours Worked:** 50 | | **Total Pay:** $990.00 | |

With these examples in mind, we turn to the parties' contentions. General Atomics argues that its wage statements show "all applicable hourly rates" and the "corresponding number of hours worked at each hourly rate" because the rates and hours listed form the basis for calculating overtime compensation. (§ 226, subd. (a)(9).) They are the "applicable hourly rates" contemplated by the statute. Green counters that the wage statements provided by General Atomics omit the overtime rate, 1.5x the regular rate, and therefore do not include "all applicable hourly rates" or "the corresponding number of hours worked at each hourly rate." We agree with General Atomics.

The phrase "applicable hourly rates" is not defined in the statute. We therefore apply its plain and commonsense meaning, viewing the phrase in context and keeping in mind its statutory purpose. Because the parties' dispute centers on the hourly rate for *overtime* pay, we examine the nature and calculation of such pay.

It is, of course, fundamental that an employee who works overtime must receive extra compensation. For example, by statute, "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." (§ 510,

9

subd. (a).)  The "regular rate of pay" therefore forms the basis for calculating statutory overtime pay.

"Significantly, an employee's 'regular rate of pay' for purposes of Labor Code section 510 and the [Industrial Welfare Commission] wage orders is not the same as the employee's straight time rate (i.e., his or her normal hourly wage rate).  Regular rate of pay, which can change from pay period to pay period, includes adjustments to the straight time rate, reflecting, among other things, shift differentials and the per-hour value of any nonhourly compensation the employee has earned."  (*Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 554 (*Alvarado*).)

"Not all employees earn at a fixed pay rate throughout a pay period, and therefore regular rate of pay is a *weighted average* reflecting work done at varying times, under varying circumstances, and at varying rates."  (*Alvarado*, *supra*, 4 Cal.5th at p. 569.)  As explained in the DLSE's enforcement manual, "Where two rates of pay are paid during a workweek, the California method for determining the regular rate of pay for calculating overtime in that workweek mirrors the federal method, based upon the weighted average of all hourly rates paid.  [Citation.]  Initially, therefore, it must be predicated upon the finding that there are established hourly rates being paid.  The rate will be established by adding all hours worked in the week and dividing that number into the total compensation for the week."  (See DLSE, The 2002 Update of the DLSE Enforcement Policies and Interpretations Manual (Revised) (August 2019) § 49.2.5, citing 29 C.F.R. § 778.115.)

Crucially, as both parties appear to agree, although the statutory overtime rate is 1.5x the regular rate, an employee does not simply earn 1.5x the regular rate for every overtime hour, in addition to the standard rate for

10

nonovertime hours. The regular rate for the employee in General Atomics' second example (Table 2A), where the employee earns two different standard hourly rates, is $18. This regular rate reflects the employee's total standard or contractual compensation ($900) divided by the employee's total hours worked (50). The overtime rate, 1.5x the regular rate, is $27. But, if that amount is applied to each overtime hour, a different total pay results ($995 rather than $990), as set forth in the table below.

| Table 3 | | | |
|---|---|---|---|
| Description | Hours | Rate | Gross Pay |
| Straight-time | 15 | $15.00 | $225.00 |
| Straight-time | 25 | $20.00 | $500.00 |
| Overtime (1.5x) | 10 | $27.00 | $270.00 |
| **Total Hours Worked:** 50 | | **Total Pay:** $995.00 | |

To use the regular rate intelligibly, the statement must reflect that *all* hours are being compensated at the regular rate, with nonovertime hours at 1.0x the regular rate and overtime hours at 1.5x the regular rate, as in the following table.

| Table 4 | | | |
|---|---|---|---|
| Description | Hours | Rate | Gross Pay |
| Straight-time | 15 | $18.00 | $270.00 |
| Straight-time | 25 | $18.00 | $450.00 |
| Overtime (1.5x) | 10 | $27.00 | $270.00 |
| **Total Hours Worked:** 50 | | **Total Pay:** $990.00 | |

Because each nonovertime hour is compensated at the regular rate, with overtime at 1.5x the regular rate, this example obscures the standard or contractual hourly rates earned by the employee. The wage statements provided by General Atomics avoid this result by identifying the standard or contractual hourly rates, with the total number of hours worked at each rate,

11

and then identifying separately the 0.5x overtime premium.  The format used by General Atomics results in the correct total pay.[3]

With this discussion in mind, we return to the statutory requirement that a wage statement show "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . ." (§ 226, subd. (a)(9).)  The wage statements provided by General Atomics show the standard or contractual hourly rates in effect for the pay period and the total number of hours worked at each rate.  This format allows an employee to calculate her total contractual compensation, and total hours worked, to arrive at the statutory regular rate of pay used to calculate overtime.  The wage statements provided by General Atomics additionally show the overtime rate as a premium, 0.5x the regular rate of pay, and the total number of overtime hours worked at that rate.  In context, the 0.5x overtime rate is the "applicable hourly rate" for those hours.  Multiplying the 0.5x overtime rate by the number of overtime hours, and adding that result to the employee's total contractual compensation, results in the correct total pay.  This format allows an employee to verify that the employer has correctly calculated both the statutory regular rate of pay (by

---

[3]     The federal district court in *American Federation of Government Employees, Local 3721 v. District of Columbia* (D.D.C. 1989) 732 F.Supp. 1 cogently explains these concepts, including additional examples.  It notes that simply listing overtime at a 1.5x rate (as in Table 3), without replacing the standard hourly rates with the regular rates, results in an incorrect total pay because it omits the regular rate "in favor of two addends which go into the weighted average used to *determine* the regular rate."  (*Id*. at p. 4.)

multiplying the 0.5x overtime rate by two) and the employee's total pay.[4] The wage statements provided by General Atomics therefore show both the applicable hourly rates and the total number of hours worked at each. They do not run afoul of the statute.

Including a 1.5x overtime rate in these wage statements would be incongruous in many circumstances. Where an employee earns a single standard hourly rate, the result is the same because the standard hourly rate happens to be the same as the statutory regular rate of pay (as in Tables 1A and 1B). (See *Chavez v. City of Albuquerque* (10th Cir. 2011) 630 F.3d 1300, 1313.) But where an employee earns multiple standard hourly rates, or other compensation, the standard hourly rates are not the same as the statutory regular rate of pay. Green's proposed solution (Table 2B) reflects hourly rates for an employee's overtime hours that are neither the standard contractual hourly rate nor the statutory overtime rate (1.5x the regular rate of pay).[5] It therefore contradicts Green's own position that wage statements must show overtime at 1.5x the regular rate of pay. Green's solution makes it more difficult for an employee to calculate her total contractual compensation because she must split the contractual compensation

---

[4]    Using Table 2A, for example, the employee can readily determine that the statutory regular rate of pay equals $18—i.e., the weighted average based on the multiple standard hourly rates of $15 and $20 ($300 + $600 = $900; $900/50 total hours = $18). 0.5x this regular rate of pay equals $9 as listed on the Table 2A wage statement. The employee can also calculate the statutory regular rate of pay by simply multiplying the specified 0.5x overtime rate by two ($9 x 2 = $18).

[5]    Using Table 2B to illustrate: Green's proposal reflects hourly rates for an employee's overtime hours ($24 and $29) that are neither the standard contractual hourly rate ($15 and $20) nor the statutory overtime rate (1.5x the regular rate of pay) ($27).

attributable to the overtime hours from the overtime premium. And Green's solution makes it more difficult for an employee to calculate the statutory regular rate of pay and the statutory overtime rate, because she must subtract the overtime hourly rate from the corresponding nonovertime hourly rate, and still double or triple that figure (for the regular rate and 1.5x overtime rate, respectively).[6]

Green relies primarily on *McKenzie v. Federal Express Corp.* (C.D.Cal. 2011) 765 F.Supp.2d 1222 (*McKenzie*) and the unpublished order in *Wright v. Renzenberger, Inc.* (C.D.Cal. March 8, 2018, No. CV 13-6642) 2018 WL 1975076 (*Wright*). They are distinguishable and, to the extent they are relevant, unpersuasive.

*McKenzie* considered a wage statement that separated hourly wages and hours worked into three categories: standard (nonovertime) hours, overtime hours, and overtime premium hours. (*McKenzie, supra,* 765 F.Supp.2d at p. 1226.) Among other things, the federal district court found that this format did not provide "an accurate overtime rate because instead of multiplying the regular rate of pay by one and one-half, the pay stubs provide two overtime rate categories and they each provide corresponding rates that are either the same or half of the regular rate." (*Id.* at p. 1231.) But, in *McKenzie*, the wage statement did not list the total hours worked. (*Id.* at p. 1229.) It was therefore unclear how the two overtime entries related to the standard (nonovertime) entry and to one another.

---

[6] Based in part on these difficulties, General Atomics argues that Green's proposed solution would actually *violate* section 226, subdivision (a)(9). We need not consider that question here. It is sufficient to resolve this proceeding to conclude that the wage statements provided by General Atomics comply with the statute. We need not decide whether wage statements in other formats would also comply.

14

(*Ibid.*)  Here, by contrast, the wage statements provided by General Atomics state the total hours worked.  It is therefore apparent that the "overtime" hourly rate represents compensation in addition to the standard contractual compensation.

*Wright* considered a wage statement analogous to Table 1A, involving an hourly employee with a single standard hourly rate.  (*Wright*, *supra*, 2018 WL 1975076, at *10.)  The court observed that, in order to determine the overtime rate, "the (partial) overtime rate on [the employee's] pay stubs must be added to the regular rate for the employee to calculate the correct overtime rate."  (*Id.* at *11.)  The employer's wage statement did not "show either the accurate overtime rate or the accurate number of hours paid at the regular rate" because it listed an overtime premium of 0.5x (rather than 1.5x) and combined nonovertime and overtime hours in the line item for the standard hourly rate.  (*Ibid.*)  *Wright* did not consider the situation where an employee earns multiple hourly rates in a single pay period or take into account the complexities of displaying a 1.5x overtime rate in that situation.  It also did not consider why, given that situation, the potential "applicable hourly rate[s]" under the statute could not include a 0.5x overtime premium.  It is therefore unpersuasive.

Moreover, the reasoning in *Wright* and, to some extent *McKenzie*, appears to run afoul of the principle in *Morgan*, *supra*, 186 Cal.App.4th 1136, that a wage statement does not violate section 226 even if it requires the employee to perform simple math to obtain the required information.  In *Morgan*, an employee challenged her employer's wage statements because they allegedly did not show the "total hours worked" under section 226, subdivision (a)(2).  (*Id.* at p. 1138.)  The appellate court disagreed.  It explained, "[I]t is undisputed that the wage statements accurately listed the

15

total number of regular hours and the total number of overtime hours worked by the employee during the pay period, and that the employee could determine the sum of all hours worked without referring to time records or other documents. The employee could simply add together the total regular hours figure and the total overtime hours figure shown on the wage statement to arrive at the sum of hours worked. There is nothing in the plain language of section 226 to support [the employee's] argument that wage statements which accurately list the total regular hours and overtime hours worked during the pay period must also contain a separate category with the sum of those two figures." (*Id*. at p. 1147.) Here, an employee can readily use the information in the wage statement to arrive at the item Green claims is missing, i.e., the statutory 1.5x overtime rate.[7] And, to the extent an employee would like to know her compensation for a given hour, she can add her standard hourly rate (listed on the wage statement) to the 0.5x overtime premium (also listed on the wage statement). For an employee who is compensated at a single standard hourly rate, this calculation will also yield the statutory 1.5x overtime rate. A wage statement that requires such simple math does not violate section 226.

Along these lines, the federal district court in *Arroyo v. International Paper Co.* (N.D.Cal. 2020) __ F.Supp.3d __ [2020 WL 887771] (*Arroyo*) disagreed with *Wright* and, as relevant here, approved of a wage statement analogous to the example in Table 1A. The court explained, "[T]his Court disagrees with the *Wright* court's conclusion that the overtime rate is unclear where the statements list an 'Overtime Premium' of one-half the regular rate

___

[7]    As reflected in the calculations in footnote 4, *ante*, an employee can calculate 1.5x the regular rate of $18 (1.5 x $18 = $27) or multiply the 0.5x overtime premium ($9) by three ($9 x 3 = $27) to reach the same result.

of pay, rather than an 'Overtime Rate' of one and one-half the regular rate of pay. The exemplar wage statement clearly states the 'Regular Hours' rate of $20.37 per hour, and directly underneath that states the 'Overtime Premium' of $10.185 per hour. The Court finds as a matter of law that this information is sufficient to show the overtime rate as required by [the statute]." (*Id*. at p. __ [*10].)

Green points out that, unlike in *Arroyo*, the wage statements provided by General Atomics do not identify overtime pay as a premium. They simply say "Overtime." But, because the wage statements provided by General Atomics separately state the total hours worked, it is apparent that the overtime rate and hours listed represent compensation *in addition to* the employee's standard compensation. It is by definition a premium on top of the employee's nonovertime compensation.[8]

Green argues that the DLSE's sample hourly wage statement supports her position. General Atomics, on the other hand, relies on the DLSE's sample piece-rate wage statement. The parties do not contend we must defer to the DLSE's interpretation, but they cite the sample wage statements for their persuasive value. (See *Alvarado*, *supra*, 4 Cal.5th at p. 559; *Morgan*, *supra*, 186 Cal.App.4th at p. 1147.) To the extent they are relevant, we conclude the DLSE's sample wage statements support General Atomics. The DLSE's sample hourly wage statement is similar to Green's proposal in

---

[8] In *Arroyo*, by contrast, the wage statements did not include a line item for total hours worked. (*Arroyo*, *supra*, __ F.Supp.3d at p. __ [2020 WL 887771, at *9].) The court found that this omission violated section 226, subdivision (a)(2). (*Ibid*.) For this reason, the identification of overtime hours as a "premium" had a significance in *Arroyo* that is not applicable here. The wage statements provided by General Atomics show the total hours worked, separate and apart from the applicable hourly wages and the hours worked at each hourly wage.

Table 1B.  It covers an employee who earns a single standard hourly rate. The DLSE's sample piece-rate wage statement contains line items for "productive" hours, i.e., hours in which the employee earned her piece-rate wage, and "non-productive" hours, i.e., hours in which the employee earned other wages.  Each of these line items contains an hourly rate and hours worked (both nonovertime and overtime).  Separately, the DLSE wage statement contains a line item for "Overtime," which lists overtime hours a second time and a 0.5x overtime premium hourly rate.  A DLSE note states, "Because all hours have been paid at their respective rates, the overtime premium portion of those hours is computed at a factor of either .5 (overtime) or 1 (double time)."

The DLSE's sample piece-rate wage statement supports our conclusion that the 0.5x overtime rate is an "applicable hourly rate" that may be listed on a wage statement under section 226.  It also supports our conclusion that a line item labeled "overtime" rather than "overtime premium" does not violate the statute under these circumstances.  Although piece-rate compensation is not at issue in this proceeding, the concepts embodied by this DLSE sample wage statement apply by analogy here.  Green's efforts to distinguish this statement are unpersuasive.  And, while the DLSE's sample hourly wage statement shows a 1.5x overtime rate (for an employee earning a single hourly rate), we disagree that the sample supports Green's position that an hourly wage statement *must* show a 1.5x overtime rate to comply with the statute.

Lastly, we disagree with Green's argument that writ relief is inappropriate here.  "An order denying a motion for summary adjudication may be reviewed by way of a petition for writ of mandate.  [Citation.]  Where the trial court's denial of a motion for summary judgment will result in trial

18

on non-actionable claims, a writ of mandate will issue. [Citations.] Likewise, a writ of mandate may issue to prevent trial of nonactionable claims after the erroneous denial of a motion for summary adjudication." (*Travelers Casualty & Surety Co. v. Superior Court* (1998) 63 Cal.App.4th 1440, 1450, fn. omitted.) The trial court's order denying summary adjudication was erroneous for the reasons we have discussed. Because Green's theory of liability was the same for both of her causes of action, our intervention would appear dispositive. Moreover, this matter involves a significant issue of law, which has left several federal district courts divided. Writ review, and relief, is appropriate.

## DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue directing the trial court to vacate its order denying General Atomics' motion for summary adjudication and enter an order granting the motion. General Atomics shall recover its costs in this original proceeding. (Cal. Rules of Court, rule 8.493(a).)


GUERRERO, J.

WE CONCUR:


HALLER, Acting P. J.


IRION, J.

19